FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 25, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MATTHEW G.,[1]

                        Plaintiff,

            v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                        Defendant.

No.    4:24-cv-05038-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

Due to depression, anxiety, bipolar disorder, lack of energy, trouble sleeping, and obesity, Plaintiff Matthew G. claims that he is unable to work fulltime and applied for disability insurance benefits and supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) and argues that he erred at step three by failing to develop the record, erred in

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER – 1

1    rejecting Plaintiff's subjective claims, and erred at steps four and five.  As is

2    explained below, the ALJ erred by failing to develop the record. This matter is

3    remanded for further proceedings.

4                              **I.    Background**

5           In November 2021, Plaintiff filed applications for benefits under Title 2 and

6    Title 16, claiming disability beginning October 29, 2021, based on the mental

7    impairments noted above.[2] Plaintiff's claim was denied at the initial and

8    reconsideration levels.[3] After the agency denied Plaintiff benefits, ALJ Stuart

9    Adkins held a telephone hearing in December 2022, at which Plaintiff appeared

10   with his representative.[4] Plaintiff and a vocational expert testified.[5]

11          Plaintiff testified that he is 5'7" and weighs 310, that he is single and has no

12   children, and that he lives by himself in an apartment with ten stairs.[6] He said

13   that he has no physical limitations and that he has a driver's license and can drive

14   without a problem.[7] He said that he has a GED and went to a couple of college

---

[2] AR 236-242, 243-248, 301.

[3] AR 130, 135, 153,156.

[4] AR 70-99.

[5] *Id.*

[6] AR 77-78.

[7] AR 78.

classes but is not even close to getting a two-year degree.[8] Plaintiff said that, if needed, his parents could serve as representative payees and that he has a two-year forklift driver's permit and a CPR certification.[9] Plaintiff said that he was in the Marines and was discharged administratively with an other-than-honorable discharge and that his discharge was due to mental health reasons.[10]

Plaintiff said that in 2007 he worked for Enterprise for Progress in the Community (EPIC) as staff who helped runaways who were placed in a lock-down facility to transition in return to their parents or placement in foster care.[11] He said that he monitored the kids and made sure they weren't getting into trouble and at times took notes.[12] It was a combination of sitting and standing, and he stocked food weighing 0 to 20 pounds, cleaned, and cooked meals for the kids.[13] In 2013, he started working with Columbia Industries in a position with mentally challenged youth and adults, making lights for railroads and valves for boats to prevent leaks.[14]He said that he helped workers with Down's Syndrome and

---

[8] *Id.*

[9] AR 79.

[10] AR 79-80.

[11] AR 80-81.

[12] AR 81.

[13] AR 81-82.

[14] AR 82.

1   blindness to be able to complete work and that in that job he lifted 35 to 45

2   pounds.[15] He said that in 2017 he went to work for Superior Striping and when the

3   weather was good he would paint stripes in parking lots and at times fill in cracks

4   in parking lots.[16] At that job he lifted up to 60 pounds.[17] Plaintiff testified that in

5   2018 he worked for a construction company as a part-time forklift operator and

6   would load flatbeds with construction supplies.[18] He said he worked at temp jobs

7   and that he then went to work as a dietary aide in a retirement home and that he

8   would lift 40-45 pounds when food was delivered weekly.[19] He worked at Wickshire

9   Fairborn Nursing Home as a cook and they started to train him to be an aide but

10  he could not finish and left the job.[20]

11          Plaintiff testified that physically he is fine but that mentally it is hard for

12  him to function.[21] He said that he has up days and down days and that he has a

13  thought pattern to try to be an asset to the company and to do all that needs to be

14

15  ───────────────

16  [15] AR 82-83.

17  [16] AR 83.

18  [17] *Id.*

19  [18] AR 84.

20  [19] AR 85.

21  [20] *Id.*

22  [21] AR 86.

23

done.[22] He will do everything he can until he feels he is doing more than others and then he will snap.[23] When he snaps he will yell at co-workers and order them out of the room and tell them he will do better.[24] He said that he tells employers that he has bipolar but that he will still keep striving to do more until he burns himself out, or that he wants to make others work harder and that he comes off as intense and hard to work with at times.[25] He said that when he is manic he has a God complex and thinks he can do everything and will get angry if told otherwise but then when he crashes he can barely function.[26] He said that when he is manic he will snap at others and not be friendly because he thinks co-workers are not working hard enough.[27]

Plaintiff testified that he was not taking medications because he has had "bad" problems with medications including very bad nightmares and that he has not found a medication that helped him function better without having worse side effects.[28] He said he takes vitamins but is afraid to take medication because he can

------------------------

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] AR 86-87.

[26] AR 87.

[27] *Id.*

[28] AR 88.

barely maintain function now and that another side effect would be too much.[29] He said that he has no sleep schedule so will wake up whenever and then try to have a goal in mind to accomplish such as trying to lose weight and will help out as he can such as volunteering at church but he can't accomplish much and is trying to figure out what to do.[30] He said that he wishes he did not live alone and will try to eat or clean house but that it depends on his mindset that day.[31] He said that he has cycles and that he knows where he is in the cycle based on how he talks and what he focuses on.[32] He stated that when he focuses on being single he knows he is in a bad place and when his focus is positive he is either normal or manic.[33] He testified he goes very high or very low and that when low he has no idea how long it will last so he just tries to have goals.[34] He said that if everything works he can accomplish things but that usually he either has will and no energy or energy and no will, and

[29] *Id.*

[30] AR 88-89.

[31] AR 89.

[32] *Id.*

[33] AR 90.

[34] *Id.*

1   that mentally he punishes himself for not accomplishing things.[35] He does not

2   enjoy his time because he cannot function.[36]

3          Plaintiff said that when he takes the medications, he has nightmares and is

4   shaken awake by satanic forces, and he is traumatized about sleeping.[37] He said

5   that because of the way he sleeps and the problems he has with energy he cannot

6   make it through the day without napping.[38] He said he will run out of energy and

7   fall asleep so fast he feels like he "passed out" and that he does not drive long

8   distances because of it.[39] He said it is involuntary and not like going to sleep.[40]

9          After the last hearing, the ALJ issued a decision denying benefits.[41] The ALJ

10  found Plaintiff's alleged symptoms were not entirely consistent with the medical

11  evidence and the other evidence.[42] As to medical opinions, the ALJ found:

12

13

---

14  [35] *Id.*

15  [36] *Id.*

16  [37] AR 91.

17  [38] AR 92.

18  [39] *Id.*

19  [40] *Id.*

20  [41] AR 21-37.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation

21  determines whether a claimant is disabled.

22  [42] AR 29-30.

23

- The opinions of state agency evaluator Jennifer Whatley, PhD, to be persuasive.

- The opinion of state agency evaluator Ermias Seleshi, MD, that there was insufficient evidence to evaluate the claim as of the date of review to be neither persuasive nor valuable.[43]

As to the sequential disability analysis, the ALJ found:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025.

- Step one: Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 28, 2021.

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, anxiety, depression, and bipolar disorder

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, including specifically Listing 1.00, 12.04, and 12.06.

- RFC:  Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

  [Plaintiff] can perform simple routine tasks but not at a production rate pace and without strict performance quotas; limited to occasional superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the

---

[43] AR 30-31.

ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; can have no interaction with the general public; no jobs involving teamwork or tandem tasks; can tolerate occasional changes to a routine work setting defined as 1-2 per week which would be explained in advance.

- Step four: Plaintiff is able to perform his past relevant work as a dietary aide.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a dishwasher (DOT 318.687-010), machine packager (DOT 920.685-078), and floor waxer (DOT 381.687-034).[44]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[45]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[46] and such error impacted the nondisability

---

[44] AR 26-32.

[45] AR 1-4, 493.

[46] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

1  determination.[47] Substantial evidence is "more than a mere scintilla but less than a

2  preponderance; it is such relevant evidence as a reasonable mind might accept as

3  adequate to support a conclusion."[48]

### III.    Analysis

5      Plaintiff seeks relief from the denial of disability on three grounds. He

6  argues the ALJ erred at Step Three by failing to develop the medical record, erred

7  in rejecting Plaintiff's subjective complaints, and erred in failing to conduct an

8  adequate analysis at Steps Four and Five.[49]  The Commissioner counter-argues

9  that the ALJ fully and fairly developed the record and asserts that the duty to

---

[47] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a), (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[48] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[49] ECF No. 8.

develop the record further is triggered only when there is ambiguous evidence or the record is inadequate to allow for proper evaluation.[50] The Commissioner also argues that the ALJ properly considered that Plaintiff's subjective complaints were not supported by the record and inconsistent with his noncompliance with treatment, which the Commissioner argued arose from Plaintiff's complaints of adverse side effects from Wellbutrin, Depakote, Lithium, Vraylar, Buspar, and Trileptal and his subsequent refusal to accept medications.[51]  Additionally, the Commissioner asserts that the ALJ did not err at Step Five because Plaintiff has failed to meet his burden to show additional limitations should be included.[52]   As is explained below, the Court concludes that the ALJ's error in failing to develop the medical record was consequential.  The Court also concludes that the record requires development.

**A.**    **Step Three/Duty to Develop: Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred at Step Three by failing to develop the medical record and by failing to conduct an adequate evaluation of whether Plaintiff met the "B" criteria.  As noted above, the Commissioner argues that the ALJ did not err in failing to develop the record because he only had to develop the

---

[50] ECF No. 9, p. 4.

[51] ECF No. 9, p. 7-9.

[52] ECF No. 9, p. 10-11.

record if it was insufficient and that it was not because "the ALJ had years of [Plaintiff's] health records and multiple opinions from [medical sources] to inform [his] decision."[53]  In his reply, Plaintiff counter-argues that the ALJ's Step Three evaluation was neither adequate nor accurate and that the ALJ ignored probative evidence and did not call a medical expert to testify or schedule a consultative examination despite the fact that there was no medical opinion from any examining source.[54]

### 1. Standard

At Step Three if a claimant meets all of the listing criteria or if his impairments medically equal a listed impairment, he is considered disabled.[55] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[56] "[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his

---

[53] ECF No. 9, p. 5 (quoting *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020)).

[54] ECF No. 10, p. 4.

[55] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[56] 20 C.F.R. §§ 404.1526, 416.926; *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

evaluation of alternative tests and the combined effects of the impairments."[57]

Pursuant to the applicable regulations, an ALJ may find that a plaintiff meets a

listing without a medical opinion supporting that finding, but cannot make a

determination that a plaintiff equals a listing unless that finding is supported by a

medical opinion of record from an acceptable medical source that the plaintiff's

impairment medically equals the listing.[58]

### 2.    The ALJ's Findings

When considering impairments at Step Three, the ALJ articulated that he

considered Listing 1.00 for obesity.[59] He stated that he considered Listings 12.04

and 12.06, as well but found that the "B" criteria were not satisfied.[60]  The ALJ

then went on to discuss the four broad areas of functioning which comprise the "B"

criteria and stated:

> In understanding, remembering, or applying information, the
> claimant has moderate limitations. The claimant alleged that he has

---

[57] *Marcia*, 900 F.2d at 176; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)

(The ALJ "must evaluate the relevant evidence before concluding that a claimant's

impairments do not meet or equal a listed impairment.").

[58] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)

(requiring a claimant to show that the impairment meets (or medically equals) all

of the specified medical criteria, not just some of the criteria).

[59] AR 27.

[60] *Id.*

difficulty remembering generally and completing tasks. However, the claimant also stated that he could go to doctor's appointments, take medications, and drive. In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, and respond to questions from medical providers (4F, Hearing).

In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that he has difficulty getting along with others and dealing appropriately with authority. However, according to his statements, the claimant is also able to spend time with friends and family and attend church. Finally, the medical evidence shows that the claimant had a good rapport with providers (4F, Hearing).

The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that he has limitations in concentrating generally and maintaining a regular work schedule. On the other hand, the claimant said that he is also able to drive and handle his own medical care. Additionally, the record fails to show any mention of distractibility (4F, Hearing).

Finally, the claimant has moderate limitations in his ability to adapt or manage himself. The claimant asserted that he has difficulties managing his mood. That said, the claimant also stated that he is able to handle self-care and personal hygiene. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and normal mood and affect (4F, Hearing).[61]

3.    <u>Relevant Medical Records</u>

Because the Court is considering the ALJ's evaluation of mental impairments, only those medical records which are relevant will be included.

---

[61] *Id.*

a. <u>*Medical Opinions*</u>

i. *Dr. Whatley*

On February 13, 2022, at the initial level, state agency consultant Jennifer Whatley, PhD, reviewed Plaintiff's file.[62] Dr. Whatley noted that she considered medical records from June 2021 from Premier Health, from November through December 2021 from TCN Behavioral Health Services, and from February through March 2021 from Big Sky Psychiatric.[63] Dr. Whatley opined that Plaintiff would have a mild limitation in the following two domains: understand, remember, or apply information; and interact with others.[64] Dr. Whately opined that Plaintiff would have a moderate limitation in the following two domains: concentrate, persist, or maintain pace; and adapt or manage oneself.[65]

Dr. Whatley opined Plaintiff is moderately limited in the ability to: maintain attention and concentration for extended periods, complete a normal workday or workweek without interruptions from psychologically based symptoms or perform at a consistent pace with the reasonable number of breaks, interact

---

[62] AR 103, 112.

[63] AR 101-102, 110-111.

[64] AR 103, 112.

[65] *Id.*

appropriately with the general public, accept instruction and respond to criticism, and respond appropriately to changes in the workplace.[66]

        *ii.*    *Dr. Seleshi*

On May 8, 2022, at the reconsideration level, state agency consultant Ermias Seleshi, MD, reviewed Plaintiff's file.[67] Dr. Seleshi noted that the following additional medical evidence had been added to the file after Dr. Whately's review:

> 3/14/22 Home visit. He has rapid speech and engaging. States his mood is stabilizing with meds. His church is helping provide resources
> 3/10/22 Clmt stopped taking lithium due to side effects and not currently on any meds. His mood is anx, dep w/ worsening manic sx. He has focus issues and racing thts. MSE Fair grooming, nml behavior, nml speech, no psychotic thts, dep, anx, irritablem ad angry mood, restricted affect, nml FOK, nml language, nml memory, atten and conc, I/J fair. start vraylar and buspar.
> 2/22/22 States depakote makes mania worse and clonidine makes him angry. MSE Fair grooming, pressured speech, concrete tht process, anx, dep, irritable, and angry mood, restricted affect, I/J fair. stop depakote and clonidine. start lithium.
> 2/22 Seen for first home visit with CM for new ISP. Clmt is med compliant. He presented with rapid speech, engaged and fairly clean. His parents provide financial assistance. He stopped last job in factory in 2021 due to mental complaints.
> 2/16/22 Reports imprvt in anger and overall mood. He feels depakote makes his mania worse. Sleep improved and appetite fluctuates. Admits he has not brushed his teeth in a long time and has diff engaging in ADLs due to low energy. MSE Fair grooming, nml behavior, no si/hi, nml tht process, angry and irritable mood, full affect, I/J good, nml memory, language nml, atten/conc nml. DX bipolar 1 d/o; unspecified ADHD. incr depakote, start clonidine.

---

[66] AR 104-105, 113-114.

[67] AR 118, 125.

1
2

1/22 (lsw) Prog note. MSE Fair grooming, restless and hyperactive, coop, flight of ideas present, nml tht content, anx mood, full affect, no si/hi, I/J poor.[68]

3

Dr. Seleshi noted that there was no medical evaluation associated with the

4

claim.[69] Dr. Seleshi also noted that there was a report of change and worsening of

5

conditions since the initial review but that there was insufficient evidence to assess

6

the claim and that additional information was necessary.[70] Dr. Seleshi wrote that

7

there was no indication that there was a medical opinion from any medical

8

source.[71]

9

4.    Analysis

10

Plaintiff argues that the ALJ failed to obtain proper medical opinion

11

evidence that might have supported such a finding.  The Court agrees with

12

Plaintiff.

13

An ALJ is not allowed to decide that a claimant equals a listing without the

14

opinion of a qualified medical expert supporting that finding.[72] In addition, "[t]he

15

ALJ always has a special duty to fully and fairly develop the record" to make a fair

16

determination as to disability, even where, as here, "the claimant is represented by

17

─────────────────

18

[68] AR 117, 124.

19

[69] AR 117, 126.

20

[70] AR 118, 125.

21

[71] AR 126.

22

[72] Soc. Sec. Ruling 17-2p. *See also Sullivan* 493 U.S. at 530 (1990).

23

DISPOSITIVE ORDER - 17

1    counsel."[73] This "affirmative responsibility to develop the record" is necessary to

2    ensure that the ALJ's decision is based on substantial evidence.[74]

3        The Commissioner's assertion that the ALJ was not required to develop the

4    record because there were multiple opinions available is erroneous on its face.

5    There was one medical opinion rendered by the non-examining source, Dr.

6    Whatley, and a statement from Dr. Seleshi that additional evidence of a worsening

7    in Plaintiff's condition made it impossible to assess Plaintiff's limitations without

8    developing the record further.  Because Dr. Seleshi stated clearly that the record

9    lacked sufficient development to render an opinion there was only one opinion in

10   the record from Dr. Whatley, and Dr. Seleshi opined that there had been a

11   worsening in condition that rendered Dr. Whatley's opinions stale.

12       Additionally, in June 2022, approximately six weeks after Dr. Seleshi's

13   review of the record, Plaintiff was involuntarily hospitalized due to suicidal and

14   psychotic behavior that included paranoid delusions and both auditory and visual

15   hallucinations.[75]  It was noted that Plaintiff was successfully treated with a

16   combination of the anti-psychotic drug Geodon and Topomax, but that he had a

---

[73] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[74] *Id.* at 1184.

[75] AR 497-560.

1    history of failed trials of anti-psychotic drugs including Haldol, Seroquel, and

2    Prolixin.[76]

3        The Ninth Circuit has found it improper for an ALJ to rely on stale medical

4    opinions that "do not reflect subsequent deterioration of a claimant's condition."[77]

5    Here, the ALJ has done just that.  The medical record consisted of one single

6    medical opinion rendered by a non-examining source prior to what a subsequent

7    examiner found to be a change in medical condition.

8        This is a case where a medical expert was needed to opine as to the

9    limitations Plaintiff's mental conditions would cause on his ability to engage in

10    full-time employment, and the evidence was insufficient to allow the ALJ to

11    properly formulate an RFC without an additional opinion from a medical expert.[78]

12    On this record, without a treating or examining mental-health opinion, the Court

13

14

15

---

16    [76] AR 498, 506.

17    [77] *Brand v. Kijakazi*, 575 F. Supp. 3d 1265, 1269 (D. Nev. 2021) (citing *Stone v.*

18    *Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (finding the ALJ erred in failing to

19    consider more recent medical reports showing claimant's foot was "progressively

20    deteriorating"); *Leslie v. Astrue*, 318 F. App'x 591, 592 (9th Cir. 2009) (finding ALJ

21    erred in relying on medical opinions issued before claimant's suicide attempt).

22    [78] Hearing, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 & I-2-5-34.

23

DISPOSITIVE ORDER - 19

1
2
"cannot conclude that the ALJ's decision was based on substantial evidence . . . [when taking] the totality of [the claimant's] mental conditions into account."[79]

3    5.    <u>Summary</u>

4    The Court concludes that the case should be remanded and the ALJ should

5    be directed to develop the record as necessary and to make a proper determination

6    at step three and all subsequent steps.

7    **B.    Subjective Complaints: This issue is moot.**

8    Plaintiff asserts that the ALJ erred in rejecting his subjective complaints.

9    Because the Court has remanded the case for development of the medical record,

10    the ALJ will be required to re-consider the medical opinions, and the credibility of

11    Plaintiff's subjective complaints.

12    **C.    Remand for Further Proceedings**

13    Plaintiff submits a remand for payment of benefits is warranted. The

14    decision whether to remand a case for additional evidence, or simply to award

15    benefits, is within the discretion of the court."[80] When the court reverses an ALJ's

16
17
18
19

20    [79] *Id.*

21    [80] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*,

22    761 F.2d 530 (9th Cir. 1985)).

23

decision for error, the court "ordinarily must remand to the agency for further

proceedings."[81]

The Court finds that further development is necessary for a proper disability

determination. Here, it is not clear what, if any, additional limitations are to be

added to the RFC. Therefore, the ALJ should properly consider the effects of all

Plaintiff's medically determinable and severe impairments, reevaluate the opinion

evidence, and make findings at each of the five steps of the sequential evaluation

process.

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is

**REMANDED** to the Commissioner of Social Security for further

proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**,

enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and

provide copies to all counsel.

---

[81] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595

("[T]he proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014).

DATED this 25th day of September 2024.

_____
EDWARD F. SHEA
Senior United States District Judge